IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

DONNIVER TERRELL JOHNSON                                        PLAINTIFF

VERSUS                                        CIVIL ACTION NO. 2:09cv168-MTP

RON KING, et al.                                                DEFENDANTS

**OMNIBUS ORDER AND ORDER ON MOTIONS**

The parties appeared and participated in an omnibus hearing before the undersigned United States Magistrate Judge on February 23, 2010. The Plaintiff appeared *pro se* and the Defendants were represented by attorney Pelicia Hall. The Court scheduled this hearing for the combined purposes of conducting a *Spears*[1] hearing; a scheduling/case management hearing; and a discovery conference. The Court's purpose in conducting the hearing is to insure the just, speedy and inexpensive determination of this *pro se* prisoner litigation. After due consideration of the issues involved in this case and the requests for discovery, the Court does hereby find and order as follows:

**1. JURISDICTION AND SUMMARY OF CLAIMS**

Jurisdiction of this case is based upon 42 U.S.C. § 1983. Plaintiff is currently incarcerated at Central Mississippi Correctional Facility (CMCF) in Pearl, Mississippi. At the time he filed this lawsuit, Plaintiff was incarcerated at (SMCI) in Leakesville, Mississippi in the custody of the Mississippi Department of Corrections (MDOC), having been convicted of a

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

1

felony.[2]  Plaintiff's claims were clarified by his sworn testimony during the *Spears* hearing.[3]

Plaintiff alleges that he was denied adequate medical treatment at SMCI for his Crohn's Disease.  Plaintiff also avers that his doctor at DCF had recommended that Plaintiff see a gastroenterologist, and had prescribed him a medical diet.  Approximately six days after he arrived at SMCI in June 2009, Plaintiff claims that he submitted a sick call request because his condition was worsening.[4]  Plaintiff claims that he was seen by a nurse who was supposed to schedule him a doctor's appointment within a week, but she did not.  Plaintiff then filed another sick call request, but claims that he received no response.  He claims that he finally got to see a doctor (Ronald Woodall)[5] approximately six weeks after he arrived at SMCI, after he had submitted his third sick call request.

Plaintiff claims that he spoke with Defendant Hubert Davis, a Warden at SMCI, on two occasions (approximately two to three weeks apart) about his worsening medical condition, and both times Warden Davis allegedly told him that he would contact someone and make sure that Plaintiff got immediate medical attention.[6]  Plaintiff avers that he never heard back from Warden Davis.  He stated that the reason he has sued Warden Davis is because he denied his requests for

---

[2] Plaintiff was transferred to CMCF in approximately September 2009.

[3] *See Hurns v. Parker*, 1998 WL 870696, at *1 (5th Cir. Dec. 2, 1998); *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987) (stating that plaintiff's claims and allegations made at *Spears* hearing supersede claims alleged in complaint).

[4] Prior to arriving at SMCI, Plaintiff had been incarcerated at Delta Correctional Facility (DCF).  Plaintiff claims that the reason he was transferred to SMCI is because a doctor at DCF recommended that he be upgraded from a "medical class II" to a "medical class III," and DCF does not house prisoners who are "medical class III."

[5] As set forth herein, Dr. Woodall is being added as a defendant in this action.

[6] However, at the hearing Plaintiff conceded that Warden Davis told him that he was not specifically in charge of the medical department.

medical treatment.

Plaintiff also claims that he wrote a letter to Defendant Christopher Epps, Commissioner of the MDOC, regarding his medical condition, but he did not respond. Plaintiff stated that the reason he sued Commissioner Epps is because he did not respond to his letter.

Plaintiff also claims that approximately four or five days after his first conversation with Warden Davis, he spoke with Defendant Ron King, Superintendent of SMCI, and told him that he had not received any response to his sick call requests. Plaintiff claims that he also told Mr. King that he should be referred to a gastroenterologist. Mr. King allegedly told Plaintiff that he would talk to one of the doctors at the infirmary and try to get him medical treatment. Plaintiff stated that the reason he is suing Superintendent King is because of the delay in receiving medical treatment and because he was not referred to a gastroenterologist.

Several weeks later, approximately six weeks after he arrived at SMCI, Plaintiff saw Dr. Woodall. Plaintiff claims that he asked Dr. Woodall if he had heard from Defendants King or Davis, and Dr. Woodall said no. Dr. Woodall told Plaintiff this was the first time he was hearing about Plaintiff's medical issues. Plaintiff claims that when he told Dr. Woodall about his medical condition, Dr. Woodall treated it as a joke, and instead of examining him or running any tests he simply prescribed him the same medication that he had been taking previously, which Plaintiff claims was not working, and told him he would get better. Plaintiff avers that he told Dr. Woodall that the doctor at DCF had recommended that he be seen by a specialist, but Dr. Woodall would not refer him. Plaintiff argues that Dr. Woodall should have changed his medication and that he should have referred him to a specialist.

While at SMCI, Plaintiff was also seen by Dr. McCleave.[7] At one point, she prescribed

---

[7] As set forth herein, Dr. McCleave is being added as a defendant in this action.

3

Plaintiff a different medication which Plaintiff claims also did not work.  Plaintiff claims that when he told Dr. McCleave that he should see a gastroenterologist, she told him she did not have authority to send him to one.  At the last appointment he had with Dr. McCleave, Plaintiff told her that his condition was getting worse, and Plaintiff claims that she just gave him gas medication.  Plaintiff complains that Dr. McCleave never gave him anything for pain relief, even though he was constantly complaining of pain.

When questioned about the harm he suffered as a result of the alleged delay in receiving medical treatment, Plaintiff testified that his condition worsened as time went by because the medications he was receiving were not working.

### 2. **DISCOVERY ISSUES**

Defendants shall produce the following documents to Plaintiff within fourteen (14) days: a copy of Plaintiff's medical records; and any grievances or complaints filed by Plaintiff regarding his medical treatment (or denial of medical treatment) at SMCI.  If Defendants obtain any medical records from an outside source, they shall provide a copy to Plaintiff within ten (10) days of receipt.

At the hearing, Defendants requested copies of the letters Plaintiff claims to have sent to various Defendants regarding his medical situation, but Plaintiff stated that he does not have any copies.

There are no other discovery matters pending at this time, except for those set forth herein.  The discovery matters set forth herein will fairly and adequately develop the issues to be presented to the Court, and no other discovery is deemed reasonable or appropriate considering the issues at stake in this litigation.  *See* Fed. R. Civ. P. 26(b)(1).  Thus, the parties shall not propound additional discovery requests unless leave of Court is requested and obtained.

## 3. PENDING MOTIONS

Plaintiff's Motion [18] to Amend Complaint is granted in part and denied in part. The motion is granted insofar as Plaintiff seeks to add as defendants Drs. Woodall and McCleave,[8] but denied with respect to Wexford Health Services and Boswell Pharmacy Services, as the court does not find that Plaintiff has stated a claim against them.[9] The court shall direct issuance of service of process upon Drs. Woodall and McCleave by separate order.

Plaintiff's Motion [24] to Amend Complaint is denied. In this motion, Plaintiff seeks to add as a defendant Dr. Gloria Perry, the Medical Director for the MDOC. However, Plaintiff testified that the only reason he wanted to sue Dr. Perry is because he wrote to her regarding his medical situation and she never responded. This is not a sufficient basis to impose liability under § 1983. *See*, *e.g.*, *Mozee v. Crowley*, 188 Fed. Appx. 241, 242 (5th Cir. July 5, 2006) (*per curiam*) ("Mozee's claim that the defendants failed to respond to his grievances does not implicate a constitutional right.") (citing *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005)); *Carlock v. Rapides Parish Sheriff's Dep't.*, 2010 WL 537103, at *2 (W.D. La. Feb. 12, 2010) (plaintiff's allegation that warden failed to respond to grievance "does not amount to a constitutional claim."); *Jones v. Livingston*, 2005 WL 3618316, at * 3 (S.D. Tex. Jan. 6, 2005) (holding that failure to provide adequate medical care claim asserted against supervisory prison official should be dismissed because "the fact that he did not respond to, or denied, plaintiff's

---

[8] Plaintiff should understand that by allowing him to amend his complaint to add these two defendants, the court is not expressing an opinion as to the merits of his claims against them.

[9] At the hearing, Plaintiff conceded that Wexford Health Services did not "do anything in particular" with regard to his medical treatment. According to Plaintiff, Boswell Pharmacy Services, is the pharmacy where either SMCI or Wexford fills its prescriptions. Plaintiff averred that he gave Dr. McCleave a list of medications that might improve his condition, but she told him that because they were not in Boswell's "book," she could not prescribe them to him.

grievances does not, alone, state a claim...").

Plaintiff's Motion [29] for Leave to File a Supplemental Complaint is denied. In this motion, Plaintiff seeks to add new claims, along with more than twenty new defendants, regarding the alleged denial of medical and dental treatment at CMCF, where Plaintiff is currently incarcerated. These claims involves different requests for medical treatment - made at different times, to different individuals, in a different facility - than those currently at issue in the case. The court has already allowed Plaintiff to amend his complaint to add the relevant medical providers at SMCI, but allowing Plaintiff to continue to add claims and parties as they arise will only delay the disposition of the claims and parties currently before the court. *See*, *e.g.*, *Singletary v. St. Tammany Parish Sheriff*, 2005 WL 3543826, at *1 (E.D. La. Nov. 17, 2005) (denying plaintiff's motion to amend, reasoning that "[j]ustice does not require that he be allowed to continually amend his complaint to add new claims as they occur . . . . At some point, continual revisions to the complaint to add new claims thwart the ends of justice, in that they delay resolution of the pending claims"). Accordingly, the motion is denied.[10]

Plaintiff's Motion [31] to Appoint Counsel is denied. There is no right to the automatic appointment of counsel in a civil case under 28 U.S.C. § 1915. *Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982); *Salmon v. Corpus Christi ISD*, 911 F.2d 1165, 1166 (5th Cir. 1990). Section 1915(e)(1) authorizes federal courts only to request that a particular attorney undertake the representation of a litigant proceeding *in forma pauperis*; it does not authorize the court to make coercive appointments of counsel. *See Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 310 (1989). Indigent litigants in federal civil rights cases generally possess no constitutional or statutory right to appointed counsel. *See Salmon*, 911 F.2d at 1166; *Jackson v.*

---

[10] Of course, Plaintiff is free to pursue these claims in a separate lawsuit.

*Cain*, 864 F.2d 1235, 1242 (5th Cir. 1989); *Cupit v. Jones*, 835 F.2d 82, 86 (5th Cir. 1987). A trial court is not required to appoint counsel for an indigent party in a civil rights lawsuit unless the case presents truly exceptional circumstances. *See Freeze v. Griffith*, 849 F.2d 172, 175 (5th Cir. 1988); *Good v. Allain*, 823 F.2d 64, 66 (5th Cir. 1987); *Feist v. Jefferson County Comm'rs Court*, 778 F.2d 250, 253 (5th Cir. 1985); *see also Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982).

Although no comprehensive definition of "exceptional circumstances" is practical, the existence of such circumstances will necessarily turn on two basic considerations: (1) the type and complexity of the case and (2) the abilities of the individual bringing it. *See Freeze*, 849 F.2d at 175; *Good*, 823 F.2d at 66; *Feist*, 778 F.2d at 253; *see also Ulmer*, 691 F.2d at 212.

The United States Court of Appeals for the Fifth Circuit has directed trial courts to consider whether the appointment of counsel would be of service not only to the plaintiff, but also possibly to the court and the defendant, through sharpening of issues, the shaping of the examination and cross-examination of witnesses, and, thus the shortening of trial and assisting in a just determination. *See Cooper v. Sheriff, Lubbock County, Texas*, 929 F.2d 1078, 1084 (5th Cir. 1991); *Jackson v. Dallas Police Dep't*, 811 F.2d 260, 262 (5th Cir. 1986); *Feist*, 778 F.2d at 253; *see also Ulmer*, 691 F.2d at 213. It is also appropriate for the court to consider whether the indigent plaintiff has demonstrated an inability to secure the assistance of private counsel, especially in view of the opportunity for a prevailing Section 1983 plaintiff to recover attorney's fees. *See Cain*, 864 F.2d at 1242.

This Court is given considerable discretion in determining whether to appoint counsel. *Ulmer*, 691 F.2d at 211. After consideration of the entire court record along with the applicable case law, the Court has determined that Plaintiff's pleadings are well presented and contain no

7

novel points of law which would indicate the presence of "exceptional circumstances." Indeed, the complaint and other pleadings filed by Plaintiff present rather straight-forward claims of denial of or inadequate medical treatment. In support of his motion, Plaintiff argues that the issues are complex and that he has a limited education and knowledge of the law. However, Plaintiff is able to effectively communicate and present his side of the case as evidenced at the *Spears* hearing held in this matter, as well as in the pleadings filed by Plaintiff to date. The issues are not complex or confusing and the motion simply does not justify or merit the appointment of counsel.

In conclusion, Plaintiff's motion simply does not justify or merit the appointment of counsel or exhibit any "exceptional circumstances." Therefore, counsel will not be appointed to the Plaintiff at this juncture of the proceedings.

### 4. **MOTIONS DEADLINE AND TRIAL**

Once the newly-added defendants have been served with process and have appeared in this action, the court will set a motions deadline by separate order. Upon expiration of the motions deadline and a ruling on any such motions, the court will set the matter for trial as appropriate.

IT IS, THEREFORE ORDERED:

1. Defendants shall produce the following documents to Plaintiff within fourteen (14) days: a copy of Plaintiff's medical records; and any grievances or complaints filed by Plaintiff regarding his medical treatment (or denial of medical treatment) at SMCI. If Defendants obtain any medical records from an outside source, they shall provide a copy to Plaintiff within ten (10) days of receipt.

2. Plaintiff's Motion [18] to Amend Complaint is granted in part and denied in part,

as set forth *supra*.

      3.      Plaintiff's Motion [24] to Amend Complaint is denied.

      4.      Plaintiff's Motion [29] for Leave to File a Supplemental Complaint is denied.

      5.      Plaintiff's Motion [31] to Appoint Counsel is denied.

      6.      This order may be amended only by a showing of good cause.

      7.      Plaintiff's failure to advise this court of a change of address or failure to comply with any order of this court will be deemed as a purposeful delay and may be grounds for dismissal without notice to the plaintiff.

SO ORDERED on this the 24th day of February, 2010.

                                          s/ Michael T. Parker
                                          United States Magistrate Judge